IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOSEPH P. CLEMENS,

    Plaintiff,

v.

ROBERT M. SPEER,
Acting Secretary of the Army,

    Defendants.

OPINION and ORDER

Case No. 16-cv-467-wmc

Plaintiff Joseph P. Clemens claims that the United States Army subjected him to a hostile work environment, failed to accommodate his disability and retaliated against him while he was employed at Fort McCoy.[1] Before the court is defendant's motion to dismiss the complaint for failure to state a claim upon which relief may be granted. (Dkt. #30.) For the reasons set forth below, the motion will be granted with respect to plaintiff's hostile work environment claim, but will be denied in all other respects. Also before the court is plaintiff's motion for assistance in recruiting counsel. (Dkt. #38.) That motion will be denied without prejudice.

---

[1] Plaintiff originally filed this case in the Northern District of Illinois, where the court recruited counsel to represent him. Plaintiff's counsel filed an amended complaint (dkt. #15), after which defendant moved to transfer the case to the Western District of Wisconsin. The District Court for the Northern District of Illinois granted the motion to transfer as unopposed and released counsel of their duty to continuing representing plaintiff.

ALLEGATIONS OF FACT[2]

A.   The Parties

Between 1993 and 2011, plaintiff Joseph Clemens worked off and on at Fort McCoy, a military and training center for the United States Army located in Monroe County, Wisconsin. In December 2008, he was promoted to Supervisory Public Safety Dispatcher and worked in the Central 911 Dispatch Center for the Director of Emergency Services at Fort McCoy. His job duties included management and assignment of work; receiving and evaluating 911 calls; providing emergency medical dispatching assistance; monitoring the status of police, fire and medical units; referring non-emergency callers to appropriate agencies; and maintaining reports on the use of reporting systems. Clemens' direct supervisor was the Director of Emergency Services Mark Fritsche.

Clemens initially named the "Department of the Army," as well as two former secretaries of the Army, as defendants in his amended complaint. However, the only proper defendant for claims of employment discrimination under the Rehabilitation Act is the head of the agency accused of having discriminated against the defendant. *See Hamm v. Runyon*, 51 F.3d 721, 722 n.1 (7th Cir. 1995). As the Acting Secretary of the Army, therefore, Robert M. Speer has been substituted as the appropriate defendant in this case.

---

[2] In resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court takes all of the factual allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

### B. Clemens Suffers a Stroke

On March 11, 2011, Clemens suffered a stroke, which required immediate medical leave, impaired his speech and prevented him from driving. By May 2011, Clemens had not yet recovered and he spoke by phone with Robert Stapel, the Chief of Police at Fort McCoy, to discuss the need for extended medical leave and accommodation.

On May 19, Clemens formally requested and was approved for extended leave. Around this time, Clemens also requested advance leave and to be placed on the Army's "leave donation program." Both requests were granted.

### C. Consideration of Accommodation

On June 13, 2011, Chief Stapel wrote to Clemens concerning "limitations you may have due to a medical condition." The letter requested "current, valid documentation in order for [Stapel] to make employment decisions." On June 21, Clemens' physician, Dr. Lev-Weissberg, provided a medical evaluation at the Army's request. The Army specifically asked Dr. Lev-Weissberg to "[i]dentify specific accommodations that are required, if any, that would allow the employee to perform the essential functions of his position as described in the attached job description." In reply, Dr. Lev-Weissberg wrote: "Perhaps text to voice."

Clemens was also seen and treated by Dr. Timothy Mikesell of Advocate Medical Group in Park Ridge, Illinois. On June 24, Dr. Mikesell provided a medical evaluation to the Army indicating that he could not predict when he would recover fully, but that Clemens may be able to work in a position that did not require "significant talking."

Clemens alleges that at no time did Chief Stapel, Director Fritsche or any other Army employee discuss relocation or reassignment to another position as a possible accommodation. They also did not discuss (1) what his qualifications for reassignment were or (2) whether there were any positions available that would not require significant talking.

**D.     Clemens Receives Poor Performance Evaluations**

In June 2011, while Clemens was still on leave, he received a "midpoint performance review" completed by Chief Stapel, rather than his direct supervisor Fritsche who was in a better position to evaluate his performance. The "midpoint performance review" gave Clemens three "failing" ratings out of five total performance objectives. The review also gave an overall "unsuccessful" report, and highlighted specific failings in areas that Clemens had previously indicated were outside of his position description. Before his stroke, Clemens' job performance had consistently been rated by his supervisors at or above expectations.

**E.     Clemens is Terminated**

On October 18 and November 7, 2011, Clemens wrote letters to United States Senator Richard Durbin for the state of Illinois relating to the Army's threatened "adverse employment actions" that were to be taken against him. The letter alleged misconduct and unlawful action on the part of the Army. Clemens alleges that his supervisors were "generally aware" of his letters to Senator Durbin.

On October 31, 2011, the same day Clemens exhausted his available leave, Clemens received a letter from Chief Stapel proposing to terminate Clemens' employment "for physical inability to perform the duties of" the position of Supervisory Public Safety Dispatcher.

By November 2011, Clemens still had not returned to work, but was given an "annual performance review," purportedly completed by both Stapel and Fritsche. Like Clemens' midpoint review, the annual review gave him three "failing" ratings out of five and gave him an overall "unsuccessful" report.

Clemens was officially terminated on December 30, 2011.

OPINION

Clemens raises three claims of disability discrimination in his amended complaint: (1) failure to provide a reasonable accommodation; (2) retaliation for seeking a reasonable accommodation and writing to Senator Durbin; and (3) hostile work environment. These claims are all governed by the Rehabilitation Act, 29 U.S.C. § 791, *et seq.*, which provides the remedy for federal employees alleging disability discrimination.[3] Defendant moves to dismiss plaintiff's claims on three principal grounds: (1) failure to state a reasonable accommodation claim; (2) failure to state a retaliation claim; and (3) failure to exhaust

---

[3] While Clemens identifies the Americans with Disabilities Act ("ADA") in his amended complaint as the basis for his claims, the ADA does not apply to the United States or its agencies. *See* 42 U.S.C. § 12111(5)(B)(i) (stating that the term "employer" does not include the United States); *Hancock v. Potter*, 531 F.3d 474, 478 n.4 (7th Cir. 2008). Even so, the Seventh Circuit has instructed district courts to analyze claims under the Rehabilitation Act when a litigant -- particularly one who is *pro se* -- incorrectly identifies the ADA as the basis for claims against a federally-funded entity. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012).

administrative remedies with respect to plaintiff's retaliation and hostile work environment claims.[4] The court will address each in turn.

I.  **Failure to Accommodate Claim**

Count 1 of plaintiff's amended complaint claims that defendant failed to reasonably accommodate his temporary speaking impairment. To succeed on a failure to accommodate claim, a plaintiff must allege that: (1) he is a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013); *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747-48 (7th Cir. 2011).[5] A qualified individual with a disability is defined as an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 1211(8). Under the ADA and Rehabilitation Act, a "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, … and other similar accommodations for individuals with disabilities," 42 U.S.C.

---

[4] Defendant also argues that any claim plaintiff is raising to recover for his stroke as a purported "work-related injury" should be dismissed for lack of subject matter jurisdiction because an action before the Secretary of Labor under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8116(c), is the exclusive remedy for such claims. This argument requires little discussion, however, because plaintiff's amended complaint does not include a claim to recover for the stroke itself. Instead, his amended complaint identifies three counts of disability discrimination, none of which seek to recover for a "work-related injury." Accordingly, FECA preemption is not a basis on which to dismiss any of plaintiff's claims.

[5] As previously noted, although the ADA does not apply to federal agencies, the standards set out in the ADA are used in determining whether a violation of the Rehabilitation Act occurred in the employment context. *See Dyrek v. Garvey*, 334 F.3d 590, 597, n.3 (7th Cir. 2003).

§ 12111(9)(B), including a medical leave of absence. 29 C.F.R. pt. 1630, App. § 1630.2(o); *see also EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005).

Defendant argues that plaintiff's claim fails on the first element, having failed to plead that he was a qualified individual with a disability. In particular, defendant argues that plaintiff has not alleged that he was able to return to work after his stroke. Because being "qualified" to work necessarily implies that the individual is actually *able* to work, defendant argues, plaintiff was not qualified individual with a disability.

In support, defendant cites *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003). In *Byrne*, the plaintiff alleged that he was so depressed that he became incapable of staying awake, as well as too suspicious of co-workers to tolerate them. Byrne further contended that his disability made him incapable of working and sought a long-term leave of absence to accommodate his disability. The Seventh Circuit found that Byrne's request for an extended leave of absence was essentially a "confess[ion] that he was not a 'qualified individual'" under the ADA. *Id.* at 381.

Defendant argues that the facts here are analogous to *Byrne* since plaintiff never again became "capable" of working as a Supervisory Public Safety Dispatcher after his stroke. However, defendant misinterprets that decision. *Byrne* held that a plaintiff's long term inability to work disqualified him from protection under ADA, but this was because leave was "his *only* proposed accommodation." *Id.* (emphasis added). In this case, plaintiff alleges that he and his physicians "proposed accommodations that would have enabled plaintiff to perform the essential functions of his job during the duration of his impairment." (*See* Am. Comp. ¶81.) In particular, plaintiff alleges that he may have been

able to perform his job (1) with a "text to voice" accommodation or (2) by being reassigned to a vacant position that did not require significant talking. (*See id.* ¶¶ 39, 43.) Since the Rehabilitation Act mandates that an employer appoint employees with disabilities to vacant positions for which they are qualified -- provided such accommodations would be reasonable and would not present an undue hardship to that employer -- the amended complaint here alleges neither an inability nor unwillingness to work. *See EEOC v. United Airlines Inc.*, 693 F.3d 760, 761 (7th Cir. 2012); 42 U.S.C. § 12111(9).

To the extent defendant is actually arguing that plaintiff failed to *communicate* his desire or ability to work, or desired accommodations, this issue cannot be resolved on a motion to dismiss. Under the Rehabilitation Act, when "notice is ambiguous as to the precise nature of the disability or desired accommodation, but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer must ask for clarification." *Sears, Roebuck & Co.*, 417 F.3d at 804. In particular, "the ADA and its implementing regulations require that the parties engage in an interactive process to determine what precise accommodations are necessary." *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996); *see also Sears, Roebuck & Co.*, 417 F.3d at 805 (An employer must "engage in a flexible give-and-take with the disabled employee" such that a reasonable accommodation may be identified that "would enable the employee to continue working."). Although "an employer's failure to engage in the interactive process alone is not an independent basis for liability, it is actionable 'if it prevents identification of an appropriate accommodation for a qualified individual.'" *Spurling*, 739 F.2d at 1062. (citing *Basden v. Prof'l Transp., Inc.*, 714 F.3d

1034, 1039 (7th Cir. 2013)). Based on the allegations in plaintiff's amended complaint, it is at least plausible to infer that the single phone call between plaintiff and Robert Stapel did not amount to an interactive process and, therefore, that defendant failed to uncover a reasonable accommodation that would have allowed plaintiff to return to work. Accordingly, defendant's motion to dismiss the failure to accommodate claim will be denied.

II.     Retaliation Claim

Next, defendant argues that plaintiff's complaint fails to state a claim for retaliation. An employer violates the ADA or the Rehabilitation Act, when the employer takes an adverse employment action against an employee because the employee engaged in an activity protected by the ADA. *Dickerson v. Bd. of Tr. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601–02 (7th Cir. 2011). Plaintiff's complaint alleges that he was retaliated against for both (1) writing to Senator Durbin that the government was threatening to terminate his employment because of his disability, and (2) seeking a reasonable accommodation. Depending on the context, plaintiff's letters and the requests for a reasonable accommodation *could* constitute protected activity. *See Preddie v. Bartholomew Consolidated School Corp.*, 799 F.3d 806, 814–15 (7th Cir. 2015) (ADA protects employees who suffer retaliation after seeking accommodation by their employer or filing a complaint of discrimination on account of disability). Accordingly, the court must examine the alleged context surrounding both.

### A. Letters to Senator Durbin

Defendant argues that the letters to Senator Durbin do not qualify as a protected activity under the ADA because (1) they do not allege disability discrimination and (2) defendant was not aware of them. The first argument is a non-starter. While defendant argues that plaintiff complains in the letters about not getting workers' compensation, having too many work responsibilities and about an incorrect pay-rate -- none of which are discriminatory employment practices prohibited by the ADA or Rehabilitation Act -- plaintiff's letters *do* mention a variety of grievances. He also includes statements that fairly describe disability discrimination. Specifically, he wrote to Senator Durbin that:

- "It has also been suggested to me, by personnel at Fort McCoy, on numerous occasions that I should just take a disability retirement. Perhaps I should, although this is in direct violation of the Government's Equal Employment policy." (Dkt. #31-2.)

- "I now have two options, face termination for suffering a stroke in the line of duty, [or] resign." (*Id.* at 4.)

Defendant does not address these statements or make any argument as to why they would not constitute a protected complaint about disability discrimination.

As for the second argument, plaintiff alleges that he *believes* his supervisors were aware of his letters to Durbin. While defendant may certainly explore whether the underlying basis for that belief is sufficient at the pleading stage or dispute it as a matter of fact, once discovery proceeds, the court will not dismiss plaintiff's retaliation claim based on his letters to Senator Durbin without more.

B.  Requests for Reasonable Accommodation

Defendant does not dispute that a request for a reasonable accommodation would be a protected activity under the ADA and Rehabilitation Act sufficient to support a retaliation claim. Instead, defendant argues that plaintiff cannot proceed with a retaliation claim based on his request for a reasonable accommodation because he failed to exhaust that claim under the Army's administrative process. Although administrative exhaustion is an affirmative defense that is not usually resolved on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court is able to consider exhaustion here because plaintiff attached his EEO charge to his complaint. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

Federal employees must exhaust available administrative remedies before bringing suit for employment discrimination under the Rehabilitation Act. *See Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) (citing 29 U.S.C. § 794a(a)(1)). This means that plaintiffs may only bring claims (1) included in their charge to the EEOC (or to the internal equal employment office within the federal agency employer, as was the case here), or (2) "reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Whitaker v. Milwaukee County*, 772 F.3d 802, 812 (7th Cir. 2014). To be reasonably related, there must be "a factual relationship between [the claims.] This means that the [administrative charge] and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Cheek v. Western & Southern Life Ins.*, 31 F.3d 497, 501 (7th Cir. 2002).

Importantly, the Supreme Court has emphasized that "technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiated the process." *Id.* (citing *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972)). Because "most EEOC charges are completed by laypersons rather than by lawyers, a plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek*, 31 F.3d at 500. Instead, courts must liberally construe the administrative proceedings when evaluating whether the claims are reasonably related to the charges in the plaintiff's complaint. *Id.*

Here, plaintiff's EEO complaint includes the following allegations, among others:

- I was retaliated against for filing a CA-2 and for contacting members of Congress to advise them of the illegal treatment I was subjected to by members of DES management.
- I was regarded as being disabled by management.
- DES management sent a threatening adverse action if I did not comply with their illegal questioning.
- DES management asked illegal questions to illicit disability related information.
- DES management refused to participate in reasonable accommodation interactive process/conversation.
- DES refused to look for a position for reassignment.
- DES used an individual, who was not my supervisor, to perform and execute all of these illegal activities and actions.
- This individual also was untruthful in his answers to the EEO Counselor.
- This adverse action is merely a pretext to just fire me without cause and is truly discriminatory in nature, solely based on their obvious ignorance, fears, myths and stereotyping of a specific class of individuals.
- DES regards me as a person with a disability.
- I was retaliated against for complaining about the hostile, harassment and intimidation, work environment, something that most coworkers and even management have referred to as "stress/stressful/stress out."

(Dkt. #31-1 at 1.)

Plaintiff's EEO charge refers explicitly to his request for reasonable accommodation, as well as alleged retaliation and threatened adverse actions. He also later identifies Chief Stapel and Director Fritsche as the people he believes were responsible for the adverse action and discrimination. (*See id.* at 2.) Thus, the EEO charge describes the same conduct and implicates the same individuals as plaintiff describes in his amended complaint. Although the EEO charge does not specifically link the request for reasonable accommodation with the alleged retaliation or threatened adverse actions, plaintiff's retaliation claims asserted in his amended complaint are "like or reasonably related to the allegations of the [EEO] charge and grow[] out of such allegations." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013). Accordingly, the court concludes that plaintiff exhausted his retaliation claim relating to his request for a reasonable accommodation.

## III. Hostile Work Environment Claim

Defendant next moves to dismiss plaintiff's hostile work environment claim for failure to state a claim.[6] To succeed on a claim of a hostile work environment under the ADA or Rehabilitation Act, plaintiff would need to show that (1) his work environment was both objectively and subjectively offensive, (2) the harassment was based on his disability, and (3) the conduct was sufficiently severe or pervasive so as to alter the

---

[6] The Seventh Circuit has not decided whether allowing a hostile work environment is actionable under the ADA or Rehabilitation Act. *See Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009). Without deciding the issue, this court will nevertheless proceed on the assumption that a hostile work environment claim is cognizable under the ADA and Rehabilitation Act and dismiss it for other reasons.

13

conditions of his employment. *See Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016); *Ekstrand v. School Dist. Of Somerset*, 583 F.3d 972, 978 (7th Cir. 2009).

The court agrees with defendant that plaintiff has not adequately pleaded a hostile work environment claim here. Most fundamentally, plaintiff was *absent* from the workplace during the entire time he alleges that he was subjected to a hostile work environment. Even assuming such a claim could be asserted for actions by an employer while on leave, plaintiff's only allegations supporting his hostile work environment claim are that he received two poor performance evaluations and then was terminated. As a matter of law, such discrete acts are insufficient to rise to the level of a hostile work environment. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct.") Accordingly, plaintiff's hostile work environment claim will be dismissed for failure to state a claim upon which relief may be granted.

## IV. Motion for Assistance in Recruiting Counsel

Plaintiff also has filed a motion for assistance in recruiting counsel (dkt. #38), stating that it will be difficult for him to litigate this case because he lives in Illinois. Plaintiff identifies several law firms that he asked for help but who have declined to represent him in this matter. Nevertheless, the court will deny his request for counsel at this time.

Because *pro se* litigants who file lawsuits in this district vastly outnumber the lawyers who are willing and able to provide representation, the court cannot find a lawyer for every litigant who requests one. Thus, assistance in recruiting counsel is appropriate only when

the plaintiff demonstrates that his is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). This is a different question than whether a lawyer might do a better job.

This case is still in its early stages. It is too early to determine whether plaintiff will need counsel at some point. Plaintiff's claims in this case are relatively straightforward compared to many other cases filed by *pro se* litigants. In particular, plaintiff has first-hand knowledge of many of the facts relevant to his discrimination and retaliation claims. Additionally, both the amended complaint filed by plaintiff's former counsel and this order will provide a useful framework for plaintiff going forward. Plaintiff should refer to both documents to identify the relevant facts and claims at issue in his case. At this point, the court is not persuaded that plaintiff will be unable to present his version of relevant events as needed. Accordingly, the motion will be denied without prejudice. Plaintiff is free to renew his motion should this case become more complex than it would now appear.

ORDER

IT IS ORDERED that:

(1) Defendant Robert M. Speer's motion to dismiss (dkt. #30), is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED with respect to plaintiff

Joseph P. Clemens' hostile work environment claim; that claim is DISMISSED. The motion is DENIED in all other respects.

(2) Plaintiff's motion for assistance in recruiting counsel (dkt. #38), is DENIED without prejudice.

Entered this 21st day of June, 2017.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge